IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHN DAY, as Personal Representative
of the Wrongful Death Estate of
Tommie James Reed, III, deceased,

    Plaintiff,

v.

MATADOR PRODUCTION COMPANY,                     No. 1:24-cv-00677-MIS-SCY
MRC ENERGY COMPANY,
WEATHERFORD U.S., L.P., and
PRO-TEK FIELD SERVICES, LLC,

    Defendants.

## ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

THIS MATTER is before the Court on Defendant Weatherford U.S., L.P. ("Weatherford")'s Amended Motion to Compel Arbitration and Stay Proceedings ("Motion") filed on February 17, 2025. ECF No. 37. Plaintiff responded on March 3, 2025, ECF No. 41 ("Weatherford Response"), and Defendant Weatherford replied in support of its Motion on March 17, 2025, ECF No. 42 ("Reply"). On April 4, 2025, pursuant to Federal Rule of Civil Procedure 10(c) and local rule D.N.M.LR-Civ. 7.1(a), Defendant Pro-Tek Field Services, LLC ("Pro-Tek") filed a notice of joinder ("Notice")[1] in Weatherford's Motion asserting that it "is similarly a third-party beneficiary" to the agreement through which Weatherford seeks to compel arbitration. ECF No. 45 at 1. Plaintiff filed a response in opposition to Pro-Tek's Notice on April 18, 2025 ("Pro-

---

[1] Although Pro-Tek failed to make reference to the filing date of Weatherford's Motion in its Notice as required by this Court's local rules, the Court, in an effort to promote judicial economy, will consider Weatherford's arguments as applicable to Pro-Tek. *See* D.N.M.LR-Civ. 7.1(a) (requiring a party adopting another party's motion or other paper to make "specific reference to the filing date and docket number of such motion or other paper"); *Hooten v. Ikard Servi Gas*, 525 F. App'x 663, 667 ("[T]he purpose of Local Rule 7.1(a) is to promote judicial efficiency and economy by precluding the unnecessary filing of motions, responses, and orders." (internal quotation marks and citation omitted)).

Tek Response"). ECF No. 49. The Motion is ripe for consideration and the Court will GRANT Defendants' request to stay and compel the matter to arbitration.

## I.     RELEVANT BACKGROUND

Plaintiff John Day, the personal representative of the wrongful death estate of Tommie James Reed, III, ("Decedent"), brings this action against Defendants Weatherford and Pro-Tek seeking damages, including punitive damages, for the Defendants' alleged negligence that Plaintiff asserts resulted in the death of Decedent during the course and scope of his employment with non-party Patterson-UTI Drilling Company LLC ("Patterson"). Compl. at 1-8, ¶¶ 1-3, 7-18, 22, 27, 29, 31, 37, ECF No. 40. Decedent died on June 9, 2023, while working at non-party Matador Resource Company's wellsite in Eddy County, New Mexico after coming into contact with an "improperly wired" oil pump unit ("Unit") in the well sub-floor and suffering an electric shock. *Id.* at 2-3, ¶¶ 7, 9-12, ECF No. 40. Before Decedent's death, in January of 2023 "Weatherford directed Pro-Tek to swap-out" the electric motor on the Unit with "a faulty electric motor[.]" *Id.* at 3, ¶ 14; Pro-Tek Answer at 3, ¶ 14, ECF No. 46.

As part of his employment onboarding with Patterson, Decl. of Greg Lakey at 1-2, ¶¶ 3-5, ECF No. 37-1, on September 12, 2022, Decedent electronically signed a "Mutual Arbitration Agreement," ECF No. 37-1 at 4-10, ("Agreement"). Section 2.0 of the Agreement sets forth the disputes intended to be covered by the Agreement and provides for its enforcement by third parties:

> **2.0     Disputes Covered by the Agreement.** The Company and I mutually understand, contract and agree to the resolution by arbitration of all claims or controversies, past, present or future, including without limitation, claims arising out of or related to my application for employment, offer of employment, employment, and/or the termination of my employment that the Company may have against me or that I may have against the Company, or any of its parents, subsidiaries, shareholders, partners, divisions, and affiliated entities; officers, directors, members, managers, employees, or agents in their capacity as such or otherwise; benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates or agents; customers and ***contractors*** (and their respective affiliates, employees,

2

> agents and sub-contractors); or successors or assigns, each and all of which may enforce this Agreement as direct or third-party beneficiaries.
>
> ***This Agreement may be enforced by third parties***, including without limitation, the Company's customers (e.g., operators of well sites at which I work) or contractors (e.g., providers of services at locations at which I work). . . .

ECF No. 37-1 at 4 (emphasis added) ("Enforcement Provision"). The Enforcement Provision continues on to provide a list of covered disputes subject to arbitration under the Agreement, to include: "(vi) claims for personal injury and/or death occurring in the course and scope of my employment or at a Company workplace . . . ." *Id.* The delegation clause in the Agreement states, in relevant part:

> **9.3    Delegation Provision, Remedies and Motions.**  The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, waiver, or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable. . . .

*Id.* at 7 ("Delegation Provision"). In addition, the Agreement provides the procedures and rules in which an arbitration is to be accomplished:

> **9.1    Qualifications, AAA Rules and Location.**  The parties will select the neutral arbitrator by mutual agreement. If the parties cannot mutually agree to an arbitrator, the arbitration will be held under the auspices of the American Arbitration Association ("AAA"), and except as provided in this Agreement, will be under the then current Employment Arbitration Rules of the AAA[.]

*Id.* at 6 ("Arbitration Provision").

Defendants, both of which are non-signatories to the Agreement, contend they are third party beneficiaries to the Agreement and urge the Court to stay this case and compel the matter to arbitration pursuant to the Agreement's Delegation Provision they claim entitles an arbitrator to decide issues of arbitrability.[2] Mot. at 6, ECF No. 37; Reply at 1-2, ECF No. 42; Notice at 1, ECF

---

[2] The Court notes that Defendant Weatherford conceded to Plaintiff's briefing of New Mexico law, noting that it "clarif[ies] that there is no gateway issue of contract formation" here. Reply at 2 n.1, ECF No. 42. The Court will therefore presume, only for the limited purposes of this Order and without finding as such, that the Agreement is a valid and enforceable contract between Patterson and Decedent and the issue to be addressed here is

3

No. 45. Specifically, Defendants assert that they are "contractors" of Patterson intended to benefit from the Agreement. Mot. at 9, 9 n.41, ECF No. 37; Reply at 3-5, 8, 8 n.32, ECF No. 42; Notice at 1, ECF No. 45. Plaintiff responds that Weatherford and Pro-Tek failed to meet their respective burdens to bring "clear and unmistakable evidence" demonstrating: (1) the question of arbitrability was delegated to an arbitrator rather than the Court; and (2) their status as alleged intended third party beneficiaries. Weatherford Resp. at 1, 3, 7-8, ECF No. 41; Pro-Tek Resp. at 2-5, ECF No. 49.

In addition, Plaintiff further submits that the Agreement is unconscionable because the Enforcement Provision "did not grant [Decedent] the right to enforce the [A]greement against" third parties (like Patterson's customers or contractors), but did permit Patterson's customers, contractors, and other third parties to otherwise compel Decedent to arbitration; Plaintiff contends this "one-sidedness" renders the Delegation Provision itself unconscionable. Weatherford Resp. at 8-10, ECF No. 41; Pro-Tek Resp. at 5-8, ECF No. 49. The Parties do not dispute that the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, governs the Agreement and that New Mexico law applies to its interpretation. Mot. at 6-7, ECF No. 37 (applying New Mexico law); *see* Weatherford

---

one of enforcement and not contract-formation. *See GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 438 (2020) ("[T]he [Federal Arbitration Act] permits a nonsignatory to rely on state-law equitable estoppel doctrines to enforce an arbitration agreement." (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631-32 (2009)); *Casa Arena Blanca LLC v. Rainwater by Est. of Green*, No. 21-2037, 2022 WL 839800, *3, *5 (10th Cir. Mar. 22, 2022) (remanding for the district court to compel arbitration when the parties did not dispute that a contract was formed and the issue was one of its enforcement by alleged third party beneficiaries—an issue for the arbitrator to decide); *Tarin's, Inc. v. Tinley*, 3 P.3d 680, 685-86 (N.M. Ct. App. 1999) (noting third parties may have enforceable rights under a contract even when not in privity with the contract). *Cf. DeArmond v. Halliburton Energy Servs., Inc.*, 81 P.3d 573, 576-80 (N.M. Ct. App. 2003) (reversing the district court's grant of movant's motion to compel arbitration by applying state contract law to determine whether there was an enforceable agreement to arbitrate when its existence is disputed by the non-movant); *Szantho v. THI of N.M. at Sunset Villa, LLC*, ___ P.3d ___, No. A-1-CA-41036, 2025 WL 441775, at *1 (N.M. Ct. App. Feb. 6, 2025), *cert. granted*, *Szantho v. THI of N.M. at Sunset Villa,* LLC, No. S-1-SC-40809 (Apr. 14, 2025) (affirming the trial court's denial of defendants' motion to compel arbitration and concluding, where the signatory to an arbitration agreement seeks to enforce the agreement against a nonsignatory, "the issue of whether a non-signatory can be bound by an arbitration agreement is a matter of contract formation" and that "as a matter of state contract law, . . . the third-party beneficiary doctrine does not permit a signatory to enforce a contract against a non-signatory third-party beneficiary where the third-party beneficiary has not otherwise sought to enforce the contract").

4

Resp. at 3, 7-10 (applying New Mexico law and not disputing FAA applicability); Reply at 6-11 (applying New Mexico law); Pro-Tek Resp. at 5-8 (applying New Mexico law and not disputing FAA applicability). For the reasons stated below, the Court will grant the Motion.

## II.   LEGAL STANDARD

Pursuant to the FAA, "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. "To implement § 2's substantive rule, a party may apply to a federal court for a stay of the trial of an action upon any issue referable to arbitration under an agreement in writing for such arbitration pursuant to § 3 of the FAA[.]" *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1280 (10th Cir. 2017) (internal quotation marks and citation omitted). The FAA provides "that a court shall order arbitration upon being satisfied that the making of the agreement for arbitration is not in issue." *Id.* (internal quotation marks and citation omitted).

Arbitration is a matter of contract and agreements to arbitrate are placed on "equal footing with other contracts" so that they can be enforced "according to their terms." *Id.* (internal quotation marks and citation omitted). As such, parties to an arbitration agreement can agree to arbitrate arbitrability. *See Brayman v. KeyPoint Gov't Sols., Inc.*, 83 F.4th 823, 832 (10th Cir. 2023) ("Because arbitration is a matter of contract, 'parties can agree to arbitrate arbitrability.'" (quoting *Belnap*, 844 F.3d at 1280)); *see also Arbitrability*, Black's Law Dictionary 127 (12th ed. 2024) (defining arbitrability as the "status of a dispute's being or not being within the jurisdiction of arbitrators to resolve, based on whether the parties entered into an enforceable agreement to arbitrate, whether the dispute is within the scope of the arbitration agreement, whether any procedural prerequisites to arbitration have been satisfied, and whether the applicable law permits

5

the arbitrators to resolve the subject matter of the dispute").

"[W]hen parties agree that an arbitrator should decide arbitrability, they delegate to an arbitrator all threshold questions concerning arbitrability—including whether their agreement covers a particular controversy." *Belnap*, 844 F.3d at 1280 (internal quotation marks and citation omitted). Clear and unmistakable intent to arbitrate arbitrability can "be inferred from the parties' incorporation in their agreement of rules that make arbitrability subject to arbitration[.]" *Id.* at 1290; *see id.* at 1284 (holding the parties clearly and unmistakably intended to arbitrate arbitrability based on the incorporation of arbitration rules that permit arbitrability be subject to arbitration in the agreement to arbitrate).

Absent a specific challenge to the delegation provision, a court "must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010). In specifically challenging a delegation provision, a party can rely on the same arguments it employs to contest the enforceability of other provisions in the arbitration agreement. *See id.* at 74 (observing that had the plaintiff "challenged the delegation provision by arguing that" the allegedly unconscionable arbitration procedures, "*as applied* to that delegation provision rendered *that provision* unconscionable, the challenge should have been considered by the court"). When such a specific objection is made, the court may consider the enforceability of an arbitration agreement with a delegation clause. *Id.* at 68-69.

Questions regarding arbitrability involve two kinds of disputes: "(1) disputes about whether a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement . . . ; and (2) threshold disputes about who should have the primary power to decide whether a dispute is arbitrable[.]" *Belnap*, 844 F.3d at 1280 (alterations, internal quotation marks,

6

and citations omitted). When addressing whether a dispute is arbitrable, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* at 1280-81 (internal quotation marks and citation omitted). When courts address the second type of dispute—"whether a party has agreed that arbitrators should decide arbitrability"—no assumption should be made that the parties agreed to arbitrate arbitrability "unless there is clear and unmistakable evidence that they did so." *Id.* at 1281 (alteration, internal quotation marks, and citation omitted); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." (alterations, internal quotation marks, and citation omitted)). "[T]he question of who should decide arbitrability" must be addressed before "the question of whether a dispute is arbitrable." *Belnap*, 844 F.3d at 1281 (alterations, internal quotation marks, and citation omitted).

State law governs whether nonsignatories to an arbitration agreement can compel a signatory to arbitrate. *Id.* at 1293 (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009)). In New Mexico, "nonparties to an arbitration agreement generally are not bound by the agreement and are not subject to arbitration." *Szantho v. THI of N.M. at Sunset Villa, LLC*, ___P.3d___, No. A-1-CA-41036, 2025 WL 441775, at *5 (N.M. Ct. App. Feb. 6, 2025) (alterations, internal quotation marks, and citation omitted), *cert. granted*, *Szantho v. THI of N.M. at Sunset Villa,* LLC, No. S-1-SC-40809 (Apr. 14, 2025). "Under existing New Mexico law, an intended third-party beneficiary may bring suit to enforce a contract signed by others." *Id.* at *9; *Premier Tr. of Nev., Inc. v. City of Albuquerque*, 482 P.3d 1261, 1271 (N.M. Ct. App. 2021) ("Only intended beneficiaries can seek enforcement of a contract." (internal quotation marks and citation omitted)). "Whether a party is a third-party beneficiary depends on if the parties to the contract intended to benefit the third party." *Fleet Mortg. Corp. v. Schuster*, 811 P.2d 81, 82-83 (N.M.

1991); *Tarin's, Inc. v. Tinley*, 3 P.3d 680, 686 (N.M. Ct. App. 1999) ("The promisor must have had reason to know the benefit was contemplated by the promise as one of the motivating causes for entering the contract." (internal quotation marks and citation omitted)).

Courts discern whether parties to a contract intended to benefit a third party by looking at "the contract itself or from some evidence that the person claiming to be a third party beneficiary is an intended beneficiary." *Id.* at 83 (internal quotation marks and citation omitted). "The paramount indicator of third party beneficiary status is a showing that the parties to the contract intended to benefit the third party, either individually or as a member of a class of beneficiaries." *Valdez v. Cillessen & Son, Inc.*, 734 P.2d 1258, 1264 (N.M. 1987); *see also Hamill v. Maryland Cas. Co.*, 209 F.2d 338, 340 (10th Cir. 1954) ("The intent to benefit the third person is generally said to be controlling, and it is to be gathered from a construction of the contract in the light of the surrounding circumstances."). Unlike an intended beneficiary, an incidental beneficiary is "a person who is neither the promisee of a contract nor the party to whom performance is to be rendered but who will derive a benefit from its performance." *Fleet Mortg. Corp.*, 811 P.2d at 83 (alterations, internal quotation marks, and citation omitted). In New Mexico, "a contract made upon a valid consideration between two or more parties for the benefit of a third may be enforced by such third party if [they] accept[] it after it is made, though [they are] not named in the contract or may not have known of it at the time." *Rankin v. Ridge*, 201 P.2d 359, 364 (N.M. 1948) (internal quotation marks and citation omitted); *see Jacks v. CMH Homes, Inc.*, 856 F.3d 1301, 1305 (10th Cir. 2017) (quoting Restatement (Second) of Contracts in support of its holding that defendants failed to cite authority to contravene the general principle that a contract cannot be enforced against an intended third party beneficiary who has neither accepted the benefit of the contract or otherwise sought to enforce the terms of the contract).

## III.  DISCUSSION

### A.  There Exists the Clear and Unmistakable Intent to Delegate Questions of Arbitrability to an Arbitrator and the Delegation Provision is Not Unconscionable.

Defendants seek to enforce the Delegation Provision as third party beneficiaries. Mot. at 2, ECF No. 37; Reply at 2-5, ECF no. 42; Notice at 1, ECF No. 45. Plaintiff's specific challenge to the Delegation Provision is that it is unconscionable when coupled with the separate Enforcement Provision that he claims is partial to third parties at the expense of Decedent. Weatherford Resp. at 8-10, ECF No. 41; Pro-Tek Resp. at 5-8, ECF No. 49. The Court finds the signatories to the Agreement—Patterson and Decedent—clearly and unmistakably agreed to arbitrate arbitrability in two places in the Agreement: (1) explicitly in the Delegation Provision and (2) when they incorporated rules of the America Arbitration Association ("AAA") into the Arbitration Provision. The Court further finds the Delegation Provision is not unconscionable.

#### *(1)*  The Agreement Delegates Arbitrability to the Arbitrator.

The Delegation Provision states that the "Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, waiver, or formation of this agreement" without limitation to include "any claim that all or any part of this Agreement is void or voidable." ECF No. 37-1 at 7; *see Lopez v. Baker*, No. A-1-CA-41699, 2025 WL 1090974, at *4 (N.M. Ct. App. Apr. 7, 2025) (reviewing an identical delegation clause and affirming that, absent a successful attack on the provision, the language constitutes clear and unmistakable evidence of the parties' agreement to arbitrate arbitrability). New Mexico courts interpret arbitration agreements "according to the rules of contract law and apply the plain language of the contract language in order to give effect to the parties' agreement." *Felts v. CLK Mgmt., Inc.*, 254 P.3d 124, 133 (internal quotation marks and citation omitted). The Court finds that based on the plain language of the Delegation Provision,

9

the signatories of the Agreement—Decedent and his employer Patterson—clearly and unmistakably intended for issues of arbitrability to be decided by an arbitrator and not a court. *See id.* at 134 (holding the plain language of the arbitration provision "evidences the parties' intent to have an arbitrator decide threshold issues of arbitrability").

In the Court's view, Patterson and Decedent clearly and unmistakably agreed to arbitrate arbitrability a second way when they incorporated the AAA rules into the Agreement. ECF No. 37-1 at 6; *see Aspen Landscaping, Inc. v. Longford Homes of N.M., Inc.*, 92 P.3d 53, 57 (N.M. Ct. App. 2004) ("A contract must be construed as a harmonious whole, and every word or phrase must be given meaning and significance according to its importance in the context of the whole contract." (internal quotation marks and citation omitted)). The Tenth Circuit has held that an arbitration agreement's incorporation of arbitration rules that provide for an arbitrator to decide arbitrability constitutes the clear and unmistakable intent of the parties to have an arbitrator decide arbitrability. *Belnap*, 844 F.3d at 1281-84 (surveying sister-court decisions that "unanimously concluded that incorporation of the substantively identical [arbitration rules] constitutes clear and unmistakable evidence of an agreement to arbitrate arbitrability" and holding the same based on the parties' incorporation of JAMS rules that provided the arbitrator with the authority to determine arbitrability).

Here, the Arbitration Provision provides:

> **9.1     Qualifications, AAA Rules and Location.** The parties will select the neutral arbitrator by mutual agreement. If the parties cannot mutually agree to an arbitrator, the arbitration will be held under the auspices of the [AAA], and except as provided in this Agreement, will be under the then current Employment Arbitration Rules of the AAA[.]

ECF No. 37-1 at 6. The AAA rules are incorporated into the Agreement as default rules, where on the possibility that the parties cannot select a "neutral arbitrator by mutual agreement" who may use rules of another service, the resolution of a dispute would "perforce" be governed by the then-

10

current version of the applicable AAA rules. *See Belnap*, 844 F.3d at 1282 (holding based on the plain language of the agreement JAMS rules are the default rules for resolution of the parties' disputes by their incorporation in the arbitration agreement where the possibility that rules of another service could govern the resolution was "not enough" for the JAMS rules not to control).

The current version of the AAA's Employment Arbitration Rules provides for the arbitration of arbitrability disputes: "The arbitrator shall have the power to rule on their own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim." AM. ARB. ASS'N, *Employment/Workplace Arbitration Rules and Mediation Procedures*, R-7(a) (May 1, 2025); *see also* AM. ARB. ASS'N, *Employment/Workplace Arbitration Rules and Mediation Procedures*, R-6(c) (Jan. 1, 2016) (permitting the arbitrator to rule on a party's objection "to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim . . . as a preliminary matter . . ."). The Court thus finds that the parties clearly and unmistakably intended for an arbitrator to decide issues of arbitrability by the specific inclusion of AAA Rules in the Agreement. *See Belnap*, 844 F.3d at 1283 (concluding arbitral forum rules were incorporated into the arbitration agreement and holding the contracting parties "clearly and unmistakably intended for an arbitrator to decide issues of arbitrability" based on the incorporated rules); *Felts*, 254 P.3d at 134 (N.M. Ct. App. 2011) (holding the incorporation of an arbitral forum's rules constitutes clear and unmistakable evidence of the parties' intent to delegate arbitrability issues to the arbitrator).

### *(2)* **The Delegation Clause is Not Unconscionable.**

Plaintiff claims that "even if" Defendants could fall within the Agreement's applicable definition of a Patterson-"contractor" to benefit from the Agreement as a third party beneficiary, under New Mexico law the Enforcement Provision is unconscionable because it is "one-sided."

Weatherford Resp. at 8-9, ECF No. 41; Pro-Tek Resp. at 5-6, ECF No. 49. Plaintiff contends the "operative provision" that "states '[t]his Agreement may be enforced by third parties'" permits third parties to seek its enforcement against him but does not similarly permit Decedent to compel third parties to arbitrate any claims they might have raised against him. Weatherford Resp. at 9, ECF No. 41; Pro-Tek Resp. at 6, ECF No. 49. The Court disagrees with Plaintiff based on the plain language of the Agreement. *See Felts*, 254 P.3d at 133 (noting New Mexico courts "must interpret the provisions of an arbitration agreement according to the rules of contract law and apply the plain meaning of the contract language in order to give effect to the parties' agreement" (internal quotation marks and citation omitted)).

Plaintiff ignores the whole of the Enforcement Provision, *see supra* at Section I, that otherwise demonstrates that the ability to compel arbitration was reciprocal between Decedent, Patterson, and third parties. The Enforcement Provision contemplates equal enforcement abilities for covered disputes, to include, as relevant here, "claims for personal injury and/or death occurring in the course and scope" of employment or at a Patterson workplace[.]" ECF No. 37-1 at 4. Patterson and Decedent contracted for "the resolution by arbitration of all claims or controversies . . . that [Patterson] may have against [Decedent] ***or that [Decedent] may have against [Patterson], or any of its . . . customers and contractors*** . . . ." ECF No. 37-1 at 4 (emphasis added). By its own language, the Enforcement Provision is mutual in that it permits Plaintiff to compel arbitration of all covered claims that any third parties may have brought against Decedent. *See Felts*, 254 P.3d at 133 ("When the parties agree to arbitrate any potential claims or disputes arising out of their relationships by contract or otherwise, the arbitration agreement will be given broad interpretation unless the parties themselves limit arbitration to specific areas or matters." (alteration, internal quotation marks, and citation omitted)).

Though the Enforcement Provision provides broadly for the enforcement of the Agreement by third parties, *see* ECF No. 37-1 at 4 ("This Agreement may be enforced by third parties, ***including without limitation***, the Company's customers (e.g., operators of well sites at which I work) or contractors (e.g., providers of services at locations at which I work)."), Section 11.0 of the Agreement confirms the parties' mutually agreed to arbitrate all disputes between and amongst each other and others, *id.* at 8 ("The Company and I agree that the mutual obligations by the Company and me to arbitrate disputes provide adequate consideration for this Agreement."). *See Aspen Landscaping, Inc.*, 92 P.3d at 57 (providing for construction of a contract "as a harmonious whole, and every word or phrase must be given meaning and significance according to its importance in the context of the whole contract" (internal quotation marks and citation omitted)). Thus, the Court concludes that the Enforcement Provision is not one-sided to render the Delegation Provision substantively unconscionable. *See Rojas v. Reliable Chevrolet (NM), LLC*, 539 P.3d 1253, 1257 (N.M. Ct. App. 2023) ("A one-sided arbitration agreement is not substantively unconscionable merely by way of its one-sidedness. Rather, our substantive unconscionability law requires a determination that the one-sidedness of an arbitration agreement is unfair and unreasonable." (internal quotation marks and citation omitted)).

The Court finds that Decedent and Patterson clearly and unmistakably intended for an arbitrator to decide issues of arbitrability, and the Delegation Provision in the Agreement is not unconscionable. The Court will next consider whether Defendants can compel Plaintiff to arbitration under New Mexico's third party beneficiary doctrine. *See Belnap*, 844 F.3d at 1292-94 (finding signatories to the arbitration agreement had to be compelled to arbitration on the basis that they clearly and unmistakably agreed to arbitrate arbitrability and then addressing whether non-signatory defendants could compel arbitration based on applicable state law).

**B.     The Signatories of the Agreement Clearly and Unmistakably Intended for its Enforcement by Third Parties.**

To determine whether nonsignatories Weatherford and Pro-Tek can compel Plaintiff to arbitrate based on the Delegation Provision of the Agreement, the Court looks to the law of New Mexico. *See Belnap*, 844 F.3d at 1293 (addressing the arbitrability of the claims against nonsignatory parties based on applicable state law doctrines); *Arthur Andersen LLP*, 556 U.S. at 630-32 (holding the question of whether a nonsignatory can compel arbitration under an arbitration agreement is governed by state law). Defendants contend that they are third party beneficiaries to the Agreement as Patterson-contractors and that under New Mexico law they are entitled to compel arbitration. Mot. at 6, 9, 9 n.41, ECF No. 37; Reply at 3, 6-8, ECF No. 42; Notice at 1, ECF No. 45. Plaintiff claims Defendants have not met their respective burdens to establish the signatories' clear and unmistakable intent that they are intended beneficiaries of the Agreement. Weatherford Resp. at 1, 3, 7-8, ECF No. 41; Pro-Tek Resp. at 2-5, ECF No. 49. For the reasons that follow, the Court finds that Patterson and Decedent intended for third parties to be able to compel disputes covered by the Agreement to arbitration.

In New Mexico, nonsignatories to arbitration agreements can enforce such agreements against signatories under multiple theories, including, as relevant here, through the doctrine of intended third party beneficiaries. *See Szantho*, 2025 WL 441775 at *5, *9; *see also Tarin's Inc.*, 3 P.3d at 685-87 (noting that even when a nonsignatory is not in privity of contract with a signatory "it might still have enforceable rights under the contract . . . as a third-party beneficiary" as "'the concept of freedom of contract becomes a compelling ground for allowing the third party to enforce the contract'" "if the parties to a contract make clear their intention to confer the power of enforcement on a third party" (quoting *Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 219-20 (7th Cir. 1996))). The plain language of the arbitration agreement can reveal whether the parties to the

14

contract intended to benefit a third party. *See Fleet Mortg. Corp.*, 811 P.2d at 83 ("Such intent must appear either from the contract itself or from some evidence that the person claiming to be a third party beneficiary is an intended beneficiary." (internal quotation marks and citation omitted)). Here, the Agreement plainly provides that it "may be enforced by third parties, ***including without limitation***," Patterson's "contractors (e.g., providers of services at locations . . . )." ECF No. 37-1 at 4 (emphasis added). As such, the Court concludes based on the plain language of the Agreement, under New Mexico law Decedent and Patterson—the signatories to the Agreement—intended for the Agreement to be enforced by third parties. *See Belnap*, 844 F.3d at 1297-98 (applying state law and concluding that the nonsignatory defendants could not compel the signatory to arbitration under the state law theories the defendants sought to enforce the arbitration agreement through); *Szantho*, 2025 WL 441775, at *9 (holding that under New Mexico law an intended third party beneficiary may seek to enforce an arbitration agreement against a signatory if they have accepted the benefit conferred on them as third party beneficiaries and finding "no support for the assertion that the third-party beneficiary doctrine works the other way around to enable a contracting party to enforce a contract against a non-signatory" (internal quotation marks and citation omitted)).

The Court is satisfied[3] that the matter should be compelled to arbitration and proceedings

---

[3] The Court finds the facts of this matter distinguishable from the facts presented to the New Mexico Court of Appeals in *Szantho*. As previously noted, the Parties do not contest the formation of the Agreement between Decedent and Patterson, *supra* at n.2, and here, unlike in *Szantho* where it was the signatory who sought to compel a nonsignatory to arbitration, 2025 WL 441775, at *1-2, nonsignatories (Defendants) seek to compel the signatory (Plaintiff) to the Agreement to arbitration on the theory that the nonsignatories are intended third party beneficiaries. The issues in *Szantho*, 2025 WL 441775, stem from "a wrongful death lawsuit regarding the care Bill Foster (Father) received while a resident at Defendants' facility." *Id.* at *1. Father did not sign any documents when admitted to the defendants' facility, rather his son—who the parties agreed "did not sign the documents as Father's legal representative"—signed the paperwork that included "a stand-alone arbitration agreement." *Id.* Father died "over one year after he was admitted" to the defendants' facility and "Plaintiff, as personal representative of Father's wrongful death estate, filed a wrongful death lawsuit against" the facility. *Id.* Father's son, the signatory to the agreements, was not a party to the litigation. *Id.* Thus, the *Szantho* court had to assess whether there was any agreement between Father and the facility defendants as to the specific arbitration clause sought to be enforced. *Id.* at *3-5 ("In every arbitration case, the first question a court must answer is whether *the parties to the litigation* agreed to arbitrate."). This case presents the inverse situation: Plaintiff, standing in the shoes of the signatory Decedent, brought a wrongful death case against Defendants, nonsignatories to the Agreement. Compl. at 1-2, ¶¶ 1-3, ECF No. 40; ECF No. 37-1 at

15

stayed based on the plain language of the Agreement evincing the Decedent and Patterson's intent to benefit third parties. *See Munoz v. Conduent State & Loc. Sols., Inc.*, No. 24-2044, 2025 WL 799482, *6-7 (10th Cir. Mar. 13, 2025) (concluding that "once a court is satisfied that (1) the parties formed an arbitration agreement (2) containing clear and unmistakable evidence that the parties also agreed to arbitrate arbitrability, questions about the validity or scope of the arbitration contract . . . are for the arbitrator and not the court to decide" and assuming the nonsignatory and signatory to an arbitration agreement did not form a contract, based on applicable state law theories the motion to compel arbitration "should have been granted"). Because the Agreement does not otherwise provide a means for discerning whether an alleged third party is a beneficiary to its terms outside of the Delegation Provision, whether Defendants are or are not "contractors"—or otherwise fall under another category of third party beneficiaries contemplated by the Agreement—is a matter to be decided by the arbitrator pursuant to the authority granted it under the Delegation Provision as an issue of arbitrability. *See Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1106 (10th Cir. 2020) ("'Courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue.'" (alterations omitted) (quoting *Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 299 (2010)); *Szantho*, 2025 WL 441775, at *5 ("Unless the court is

---

4-10. In New Mexico, when the court is "satisfied that the parties agreed to arbitrate [a] dispute" a nonsignatory who accepts the benefits of a contract "signed by others" as "an intended third-party beneficiary may bring suit to enforce . . ." the contract. *Szantho*, 2025 WL 441775, at *7-9 (noting that "although intended third-party beneficiaries are not in privity of contract, they are accorded traditional contract remedies with respect to the bargain intended for their benefit" and concluding the third party beneficiary doctrine in New Mexico does not "enable a contracting party to enforce a contract against a non-signatory" (alternations, internal quotation marks, and citation omitted)). As such, this Court need only discern whether, under the facts presented, the third party beneficiary doctrine as recognized in New Mexico provides a basis for binding Plaintiff to the Agreement. *See id.* at *9 (holding New Mexico's third-party beneficiary doctrine did "not provide a basis for binding" the nonsignatory plaintiff to the arbitration agreement signed between other parties because the doctrine does not work "the other way around to enable a contracting party to enforce a contract against a non-signatory" (internal quotation marks and citation omitted)).

16

satisfied that a non-signatory has agreed to arbitration, the non-signatory cannot be compelled to arbitration.").

## IV. CONCLUSION

After considering the Parties' arguments, the record, and relevant law, for the foregoing reasons Defendants Weatherford U.S., L.P.'s Amended Motion to Compel Arbitration and Stay Proceedings, ECF No. 37, is **GRANTED** and this matter is **STAYED** pending the completion of the arbitration proceedings. Within thirty (30) days of the completion of the arbitration proceedings, the Parties shall file a joint notice indicating that the proceedings have ended, and the Court may close the case.

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE